

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANNY LINARES | No. 25 CR 46<br><br>Judge Joan Humphrey Lefkow |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant DANNY LINARES, and his attorney, EMILY MOLLINEDO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The indictment in this case charges defendant with possession and transfer of a machinegun, in violation of Title 18, United States Code, Section 922(o)(1).

3. Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.  By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, which charges defendant with possession and transfer of a machinegun, in violation of Title 18, United States Code, Section 922(o)(1).

## Factual Basis

6.  Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about January 15, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, defendant DANNY LINARES knowingly possessed and transferred a machinegun, as defined in Title 26, United States Code, Section 5845(b), namely (a) an un-serialized firearm resembling a Glock 19, which had been modified through a Glock Conversion Device, also known as a Glock switch, to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, and (b) a Glock Conversion Device, also known as a Glock switch, recovered January 15, 2025, a part designed and intended solely and exclusively for use in converting a weapon into a machinegun, in violation of Title 18, United States Code, Section 922(o)(1).

More specifically, on or about January 15, 2025, LINARES drove a beige Honda Accord and arrived at the area near the 800 Block of West 63rd Street to meet an undercover officer ("UC-1") who was posing as a firearms purchaser. Once LINARES

arrived at the meeting location, he parked the Honda Accord nearby UC-1's car (the "UC Vehicle"). LINARES exited the Honda Accord and greeted UC-1. LINARES handed UC-1 a black back plate, that is a component typically affixed to the rear of a handgun, and remarked to UC-1 "here is the cap, if you want to change it back." Shortly thereafter, LINARES walked to the driver's side door of the UC Vehicle. LINARES took out of his pocket a black un-serialized handgun resembling a Glock 19 equipped with a red Glock Conversion Device and placed the handgun on the driver's seat of the UC Vehicle. UC-1 commented on the appearance of the conversion device, namely that it appeared to be made of plastic and did not feature the selector rod (found in some Glock Conversion Devices) that manually converts the firearm to fully automatic fire. In response, LINARES explained to UC-1 that the handgun was equipped with a Glock Conversion Device that was made of incorporated fiber that releases "pure burst." UC-1 then asked, "so just one pull and 'tra' [mimicking the sound of a machine gun], and there's no button [referring to the selector rod] or anything right?" UC-1 responded, "there's no button or anything."

UC-1 then asked LINARES, "do you have more? [referring to additional Glock Conversion Devices]. LINARES told UC-1 that he had one more left. LINARES walked to the Honda Accord and retrieved a second red Glock Conversion Device, similar in appearance to the Glock Conversion Device installed on the handgun, and gave it to UC-1. LINARES asked UC-1 if UC-1 knew how to install a Glock Conversion Device. UC-1 tendered to LINARES $1,350 in United States Currency

3

($1,200 for the handgun quipped with the Glock Conversion Device, and $150 for the stand-alone Glock Conversion Device).

LINARES knew that the black handgun was not serialized. LINARES also acknowledges that (i) the black handgun equipped with the Glock Conversion Device had been modified to shoot automatically more than one shot, without manual reloading, by a single function of the trigger; and (ii) the stand-alone Glock Conversion Device was a part designed and intended solely and exclusively for use in converting a weapon into a machinegun.

LINARES provided UC-1 LINARE's phone number. LINARES then, using his phone, showed UC-1 a picture of another gun that LINARES described as a Glock 17 fifth generation. LINARES told UC-1 that was in possession of this gun and added "whatever you need, I can help you with whatever you need."

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

   b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

4

## Sentencing Guidelines Calculations

8.  Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.  For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

    a.  **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 1, 2024 Guidelines Manual.

b. **Offense Level Calculations.**

   i. The base offense level is 18, pursuant to Guideline § 2K2.1(a)(5).

   ii. Pursuant to Guideline § 2K2.1(b)(4), the offense level is increased by four levels, because the defendant knew that a firearm involved in the offense was not otherwise marked with a serial number.

   iii. The government understands that defendant will truthfully admit the conduct comprising the offense(s) of conviction, and truthfully admit or not falsely deny any additional relevant conduct for which the defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate

   iv. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its

resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    v.  **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

   c.  **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the government anticipates the offense level to be 19 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 30-37 months' imprisonment, in addition to any supervised release and fine the Court may impose.

   d.  Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation

and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by the government prior to sentencing. The government may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in the government's position regarding the guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea on the basis of such corrections.

**Agreements Relating to Sentencing**

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does

not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release or probation imposed in this case, a requirement that defendant repay the United States $1,350 as compensation for government funds that defendant received during the investigation of the case.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

15. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 25 CR 46.

16. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

17. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a

reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b.  **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed.

Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

18. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

19. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the District Court's attention fully and accurately, including facts related to the defendant's criminal conduct and related conduct, and any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

20. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information,

may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

21. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

22. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

23. Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents,

testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

24. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant

nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

25. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

26. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

15

27. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 10/15/25

_____
Signed by Andrew C. Erskine on behalf of
ANDREW S. BOUTROS
United States Attorney

ANDREW ERSKINE
Digitally signed by ANDREW ERSKINE
Date: 2025.10.13 14:21:08 -05'00'

_____
MINJE SHIN
Assistant U.S. Attorney

_____
DANNY LINARES
Defendant

_____
EMILY MOLLINEDO
Attorney for Defendant